Plaintiff seeks to recover compensation at the rate of $20 per week for a period not exceeding 400 weeks, plus medical expenses of $250, for total and permanent disability which he alleges resulted from an accident arising out of the course of his employment while working for the Stone and Webster Engineering Corporation on September 14, 1943. The defendant was the compensation insurance carrier for the employer. Plaintiff alleges that he was assisting another employee in washing out a heavy barrel used for drinking water when he suffered an injury called diastasis recti (separation of the rectus muscles of the stomach) and an umbilical hernia.
The defendant denies the injury and disability and also denies the rate of pay alleged to be $36 per week. The trial resulted in a judgment for the defendant, rejecting plaintiff's demands, and he has appealed.
Plaintiff testified that he was helping pick up a large water keg to tilt it over in order to wash it out to fill with ice water when the barrel slipped back and the weight of the barrel fell on him and pulled him down; that shortly thereafter he felt a pain in his stomach and the man who was working with him told him to go to the first aid station, and he got a slip from his foreman and went to the first aid station an hour or two after he felt the pain; that the first aid man gave him some anticeptic powder, as he thought the trouble was gas pains. He continued to work the rest of the day cleaning up and putting paper cups at the barrels, and after two or three days he told the lady at the first aid station he was not getting any better and she sent him to Dr. George, the company doctor. He continued to do light work while he was treated by one of the company doctors, but was discharged after a few days. He claims that he had pains in his stomach and could not do hard work. He was treated by the company doctors for some two or three weeks, and later went to see Dr. Mosely.
Dr. Mosely told the plaintiff he had a hernia, and he was sent to Dr. Moore, an osteopath, who gave him a belt to wear for supporting his stomach.
The trial judge stated in his reasons for judgment that the evidence shows that plaintiff did have an accident as he alleged, but the trial judge was of the opinion that plaintiff did not suffer a hernia or other disabling injury from the accident. The other employee who was working with the plaintiff corroborated his statement as to the accident and his complaint of pain shortly thereafter, and the record shows that plaintiff did go to the first aid station and complained of pain in his stomach. He was sent to the company doctor by the lady at the first aid station, and it is reasonable to conclude that plaintiff did suffer some kind of an accident. The only serious question in the case is whether or not the injury was of such a nature as to produce disability.
Plaintiff was treated by Dr. George and his assistant, Dr. Hoth, about eight times between September 16th and October 4th. The accident is alleged to have occurred on September 14th, and the evidence shows that it did occur around that date, or possibly a few days earlier. Dr. George first diagnosed plaintiff's complaint as strain of the abdominal muscles, but when he examined plaintiff later he found that he had a small opening in the rectus muscle sheath and fascia, and an impulse transmitted to the examining finger on coughing and a slight bulge on straining. The doctor stated that the plaintiff did not have an umbilical hernia, and, in his opinion, he was not disabled from doing the kind of work he was doing when he claims to have gotten hurt. The doctor did state that plaintiff was probably disabled for two or three weeks from the strained muscles in his stomach.
Dr. Hoth says he did not treat plaintiff but did examine him on the day of the trial and found that he has a "diastasis recti practically the entire length of the rectus muscles" and also a small defect in the umbilical region. The doctor expressed the opinion that these conditions are congenital and not the result of an injury. The doctor does not think the condition *Page 740 
would prevent plaintiff from doing manual labor.
Dr. Hoth was presented with a report which he signed for an accident insurance company on. October 13, 1943, just about a month after plaintiff claims to have gotten hurt, in which report, the doctor states that the first visit or treatment given plaintiff was September 16, 1943, and in the report the injury is described as strain of the abdominal muscles, with total disability at the time the report was made. The doctor in explaining this report stated that he did not treat plaintiff, and was of the opinion that the report was filled out by a secretary in the office and it was presented to him to sign for Dr. George.
It might also be mentioned here that Dr. Hoth examined plaintiff for employment on January 4, 1943, and his report shows no hernia or abdominal defects. And Dr. George also made a pre-employment examination of plaintiff on April 3, 1943, and his report does not show any hernia or abdominal defects.
Plaintiff was examined by Dr. Mosely about two weeks after the alleged accident and was later examined by Dr. Kern. Both of these doctors found a slight potential umbilical hernia and a separation of the abdominal muscles, there being some difference in their testimony as to the extent of these conditions, but both doctors thought the condition was such as to disable plaintiff from doing manual labor without exaggerating the condition.
Dr. Hatcher examined plaintiff three or four months after the accident and found no umbilical hernia, but found an opening in the umbilicus which he thought was congenital and did not cause disability. He did not find any separation of the rectus muscles and said he would pass plaintiff for industrial employment.
In view of the difference in the medical testimony on the part of the doctors produced by the plaintiff and the defendant, the court appointed Drs. McHugh and Slaughter to examine the plaintiff. The substance of their testimony is that plaintiff has a small umbilical defect which condition they think did not result from an accident but is congenital and does not produce disability. Dr. Slaughter found no separation of the rectus muscles, but Dr. McHugh did find this separation but thought this condition would not produce disability and that it did not result from an accident.
Dr. Pickell examined plaintiff at the plaintiff's request and found an epigastric hernia located about two inches above the navel, which he thought was caused from trauma, and was not congenital. He found no separation of the rectus muscles, but thought the hernia produced total disability.
With this difference and confusion in the medical testimony this court has the difficult task of deciding whether or not plaintiff is disabled from the accident. He did suffer some strain and injury to his stomach when the water barrel fell on him. However, the medical testimony is so conflicting that it is impossible to tell how extensive the umbilical defect is and just how serious is the separation of the rectus muscles. The preponderance of the medical testimony shows that he has a slight hernia, or at least a defect or potential hernia, in the umbilicus, and a separation of the rectus muscles. But the medical evidence is about equally divided as to whether or not this condition is congenital or resulted from or was aggravated by trauma. The medical testimony is also divided as to whether or not the condition is disabling.
[1] In addition to proving the accident, the plaintiff was required to prove with reasonable certainty that the accident either directly caused a disability or aggravated a pre-existing condition to the extent that he was rendered incapable of doing the kind of work he was doing at the time of the accident. It is hardly probable that the injury received by plaintiff produced immediately an umbilical hernia or a separation of the rectus muscles. Some of the medical testimony is to the effect that an injury sufficient to cause either of these conditions would have produced severe pain in the area affected immediately on sustaining the injury, whereas it appears that plaintiff did not complain of pain until an hour or so after the water barrel fell on him.
[2] It is also shown that plaintiff did some rather strenuous work after the accident, cutting grass, trimming trees and raking leaves, servicing cars at a filling station, assisting in moving tires upstairs and unloading beef at a packing plant. His work for the defendant company was that of a water boy, the most strenuous part of which was helping tilt the water barrels so they could be washed out and putting *Page 741 
ice in the barrels. The rest of his duties were very simple, such as handling the drinking cups for the men and sweeping around the place. It seems to us that he was able to do about the same type of work after the accident as he was doing prior thereto.
However, we cannot disregard the fact that the record in the office of Drs. George and Hoth, the company doctors, shows that the plaintiff was disabled from September 16th to October 13th, a period of approximately four weeks, and Dr. Hoth reported such disability to an accident insurance company. Whatever might have been the way this report was made up and signed in the office of the two doctors, we cannot believe that they would have let such a report come out of their office unless there was some basis for the statements made therein. We will award plaintiff compensation for this period.
The trial judge refused to permit Dr. Moore, an osteopath, to testify as an expert. Regardless of whether or not this ruling was correct, there would be no useful purpose served in remanding the case as his testimony could hardly change the result, assuming that it would be favorable to the plaintiff.
[3] Plaintiff was employed on the basis of a nine hour day, six days per week, at 50 cents per hour, with time and a half for overtime. During the week ending September 13, 1943, about the time of the accident, he worked 63 payroll hours and earned $31.50. We think this is a proper basis on which to calculate his weekly pay, 65 per cent of which is $19.83.
The only items of medical expense shown to have been incurred are the sum of $28.54 due to Dr. Moore for medical services and belt and the sum of $25 due Dr. Pickell for an examination, a total medical expense of $53.54.
For the reasons assigned, it is ordered that the judgment appealed from be reversed and set aside, and it is now ordered that plaintiff have judgment against the defendant, Royal Indemnity Company, for the sum of $132.86, being the sum of $79.32 for four weeks compensation at the rate of $19.83 per week, plus the sum of $53.54 for medical expenses, with legal interest on the total award from judicial demand until paid, and all cost of the suit.